## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**UNITED STATES OF AMERICA**

**v.**                                                         **Criminal Case No. 3:03cr394-31**

**ANTOINE D. ALLEN,**

   **Defendant.**

### MEMORANDUM OPINION

This matter comes before the Court on Defendant Antoine D. Allen's Motion to Reduce Sentence Pursuant to The First Step Act of 2018 (the "Motion for Compassionate Release"). (ECF No. 1671.) The United States responded in opposition to the Motion for Compassionate Release. (ECF No. 1682.) Mr. Allen replied. (ECF No. 1690.) The Court directed the parties to file supplemental briefs to address whether Mr. Allen's conviction in Count Two remained a covered offense under the First Step Act in light of the Supreme Court's holding in *Terry v. United States*, 593 U.S. 486, 488, 495 (2021). (ECF No. 1700.) Both Mr. Allen and the United States filed supplemental positions. (ECF Nos. 1705, 1706.)

This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons articulated below, the Court will grant in part the Motion for Compassionate Release and reduce Mr. Allen's sentence on each count from life imprisonment to 480 months', or forty (40) years', imprisonment, to run concurrently.

## I.  Background

### A.    Mr. Allen's Underlying Offense

On February 26, 2004, Mr. Allen and seventeen other individuals were charged in a two-count Second Superseding Indictment[1] returned by an Eastern District of Virginia Grand Jury: Conspiracy to Commit Violations of the Racketeering Influenced and Corrupt Organizations ("RICO") Act, in violation of 18 U.S.C. § 1962(d), between the years 1998 and 2003 (Count One), and Conspiracy to Distribute and Possess with Intent to Distribute and to Distribute Cocaine Base, in violation of 21 U.S.C. § 846, between the years 1998 and 2003 (Count Two) (ECF No. 1629-1, at 4–5.)

On March 2, 2004, Mr. Allen, along with the other defendants named in the Second Superseding Indictment, was charged in a two-count Third Superseding Indictment returned by the grand jury:  Conspiracy to Commit Violations of the Racketeering Influenced and Corrupt Organizations ("RICO") Act, in violation of 18 U.S.C. § 1962(d), between the years 1998 and 2003 (Count One), and Conspiracy to Distribute and Possess with Intent to Distribute and to Distribute Cocaine Base, in violation of 21 U.S.C. § 846, between the years 1998 and 2003 (Count Two).  (ECF No. 1629-1, at 5.)  On August 3, 2004, following a seven-day trial, a jury found Mr. Allen guilty on both counts of the Third Superseding Indictment.  (ECF No. 1629-1 ¶ 5.)

---

[1] The original one-count Indictment, which did not include Mr. Allen, was returned by the grand jury on November 4, 2003, and charged the defendants with Conspiracy to Possess with Intent to Distribute and to Distribute 50 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 846, between the years 1998 and 2003.  (ECF No. 1629-1, at 4.)

The first one-count Superseding Indictment, which also did not include Mr. Allen, was returned by the grand jury on December 3, 2003, and charged the defendants with Conspiracy to Possess with Intent to Distribute and to Distribute 50 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 846, between the years 1998 and 2003.  (ECF No. 1629-1, at 4.)

Prior to Mr. Allen's November 17, 2004 sentencing, the probation officer prepared the Presentence Report ("PSR"), summarizing the conduct of Mr. Allen's underlying offense. (ECF No. 1629-1.) Mr. Allen was alleged to have conspired with his co-defendants to distribute "crack" cocaine as associates of a drug distribution organization that operated in the Third Ward District of Petersburg, Virginia. (ECF No. 1629-1 ¶ 41.) The organization was known as the Third Ward Gang, which competed with rival gangs, including the "Carter Boys" of the Fifth Ward of Petersburg, for influence over drug territory and using violence to elevate a member's status within the gang. (ECF No. 1629-1 ¶ 45.) Members of the Third Ward Gang carried firearms to intimidate rival gang members and to protect themselves and their drug supply. (ECF No. 1629-1 ¶ 45.)

Mr. Allen was associated with the gang and street-level distribution of "crack" cocaine from at least 1998, when he was only 15 years old, until August 2001, when he was arrested for murder at the age of 18.[2] (ECF No. 1629-1 ¶ 49.) In the days leading up to August 28, 2001, Mr. Allen and his confederates were involved in shootings with the Carter Boys gang. (ECF No. 1629-1 ¶ 49.) On August 28, 2001, Mr. Allen and others drove by the Royal Inn, recognized a member of the Carter Boys gang, Deandrew Carter, and began shooting at him. (ECF No. 1629-1 ¶ 49.) A bystander, Robert Brabson was struck and killed by a stray bullet. (ECF No. 1629-1 ¶ 49.)

---

[2] Following his arrest, Mr. Allen was found guilty of Use of a Firearm While Committing Attempted Murder and Attempted Murder in the Circuit Court for the City of Petersburg, Virginia. (ECF No. 1629-1 ¶ 49.) He received an aggregate sentence of 13 years' imprisonment, with four years and nine months suspended, meaning he was removed from drug distribution activities in August 2001, when he was arrested and held until the state trial proceeding occurred. (ECF No. 1629-1 ¶ 49.)

The PSR also summarizes Mr. Allen's offense level and criminal history. (ECF No. 1629-1 ¶¶ 52–71.) When determining the Base Offense Level for a charge relating to Racketeer Influenced and Corrupt Organizations ("RICO"), if "there is more than one underlying offense, [one must] treat each underlying offense as if contained in a separate count of conviction for the purposes of [USSG § E1.1(a)(2)]." U.S. SENT'G GUIDELINES MANUAL § 2E1.1 app. Notes (U.S. SENTENCING COMM'N 2003). Therefore, Count One against Mr. Allen was separated into Count One(A) -- the underlying offense of Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base (At Least 50 Grams but Less Than 150 Grams of Cocaine base) -- and Count One(B) -- the underlying offense of First-Degree Murder of Robert Brabson. (*See* ECF No. 1629-1, at 32–33.) Pursuant to U.S.S.G. § 3D1.2, "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." Count One(A) and Count Two were grouped, resulting in a Base Offense Level of 32 pursuant to U.S.S.G. § 2D1.1(c)(4). (ECF No. 1629-1, at 32.) Pursuant to U.S.S.G. § 3D1.1(b)(1), Mr. Allen received a 2-level increase for possessing a firearm during the underlying offense conduct. (ECF No. 1629-1, at 32.) Count One(B) had a Base Offense Level of 43 pursuant to U.S.S.G. § 2A1.1(a). (ECF No. 1629-1, at 33.) When an individual has been convicted of multiple counts, "[t]he combined offense level is determined by taking the offense level applicable to the Group with the highest offense level. . . ." U.S.S.G. § 3D1.4 (2003). Therefore, as he did not receive any adjustments to his offense level, Mr. Allen's Total Offense Level was 43. (ECF No. 1629-1, at 29, 34.)

Mr. Allen's criminal history score subtotaled 8 points. (ECF No. 1629-1, at 35–36.) His prior convictions include assault, attempted robbery, and possession of a stolen automobile as a juvenile and possession of marijuana and cocaine, use of a firearm in the commission of a felony, and attempted murder as an adult. (ECF No. 1629-1 ¶¶ 52–71.) Mr. Allen received a two-point

4

enhancement for committing the offense while under a criminal justice sentence under U.S.S.G. §§ 4A1.1(d) and 4A1.2. (ECF No. 1629-1, at 37.) Mr. Allen also received a one-point enhancement for committing the instant offense less than two years after he was released from imprisonment under U.S.S.G. §§ 4A1.1(e) and 4A1.2. (ECF No. 1629-1, at 37.) These enhancements resulted in a criminal history score of 11, which established a Criminal History Category of V.

A Total Offense Level of 43 and Criminal History Category of V resulted in a Sentencing Guideline of Life imprisonment. (ECF No. 1629-1 ¶¶ 101–103.) On November 17, 2004, the Court sentenced Mr. Allen to a term of Life imprisonment on each count, to run concurrently to each other and with his then-present state sentence. (ECF No. 778.) The two Life terms of imprisonment were to be followed by concurrent five-year terms of supervised release on each count. (ECF No. 778.)

As of January 15, 2025, Mr. Allen has been incarcerated for approximately 249 months and 30 days, or just about 20 years and 10 months, and is currently housed at USP McCreary in Pine Knot, Kentucky. (*See* ECF No. 1629-1, at 1); *See Fed. Inmate Locator*, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Jan. 15, 2025); *see USP McCreary*, BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/mcr/ (last visited Jan. 15, 2025).

**B.     Mr. Allen's Motion for Compassionate Release**

On June 17, 2019, Mr. Allen filed his *Pro Se* Motion to Reduce Sentence Pursuant to the First Step Act of 2018 Section 404(b). (ECF No. 1611.) On November 18, 2020, Mr. Allen's appointed counsel filed an amended motion. (ECF No. 1671.) On November 20, 2020, Mr. Allen filed an Informal Supplemental *Pro Se* Brief. (ECF No. 1672.)

In the Motion, Mr. Allen claims that he is eligible for a discretionary sentence reduction under § 404 of the First Step Act because the Fair Sentencing Act of 2010 amended the mandatory minimum sentencing scheme for certain drug offenses, including his. (ECF No. 1671, at 8.) Specifically, Mr. Allen submits that his mandatory minimum sentences on Counts 1(A) and 2 now amount to five years (60 months) rather than 10 years (120 months), as was the case when he was sentenced. (ECF No. 1671, at 8.) Mr. Allen also submits that, under the 2020 Sentencing Guidelines Manual, his advisory guidelines range has changed and, if he were sentenced today, his base offense level for Count One(A) and 2 would be 26, rather than 32, and his guideline range is 130 to 162 months' imprisonment, with a mandatory minimum sentence of 60 months. (ECF No. 1671, at 8.) Mr. Allen requests a reduction of his sentence to time served. (ECF No. 1671, at 1.)

On January 30, 2021, the Government filed a Response in Opposition to Mr. Allen's Motion. (ECF No. 1682.) In doing so, the Government disputed Mr. Allen's eligibility for a *total* sentence reduction under the First Step Act. (ECF No. 1682, at 1.) While the Government concedes Mr. Allen is eligible for a sentence reduction on Count Two, it maintains that he is ineligible for such relief on Count One because the First Step Act does not modify statutory penalties for RICO convictions. (ECF No. 1682, at 12–13.) Because a life sentence on Count One would ultimately still render a total Life term of imprisonment, the Government contends that Mr. Allen's current term of imprisonment should not be disturbed. (ECF No. 1682, at 14.)

On March 16, 2021, Mr. Allen replied to the Government's Motion in Opposition. (ECF No. 1690.) Rejecting the Government's position with respect to Count One, Mr. Allen contends that his RICO convictions are eligible for relief under Section 404 because the predicate drug offenses were "covered" by the First Step Act. (ECF No. 1690, at 2.)

6

Following the Government's concession that Count Two qualified as a "covered offense" under the First Step Act, the Supreme Court clarified the scope of a "covered offense." *Terry v. United States*, 593 U.S. 486, 492 (2021) (defining a "covered offense" as an individual offense for which the statutory penalties were modified for the First Step Act).  On September 2, 2021, the Court ordered the Parties to file supplemental briefs regarding whether Mr. Allen's conviction in Count Two remains a "covered offense" under *Terry.*  (ECF No. 1700.)  Both parties agree that it does.  (*See* ECF Nos. 1705, 1706.)

In its Worksheet filed before the initial briefing, the United States Probation Office recommended that the Court find Mr. Allen ineligible for relief on Count One and eligible on Count Two.  (ECF No. 1629, at 1.)  The Probation Officer noted that the statutory penalty for Count One did not change under the Fair Sentencing Act.[3]  (ECF No. 1629, at 1.)  However, the statutory maximum under Count Two now stands at forty years.  (ECF No. 1629, at 1.)

## II.  Legal Standard

Generally, courts do not have the authority to modify a term of imprisonment once a sentence has been imposed. *Freeman v. United States*, 564 U.S. 522, 526 (2011).  Courts operate under a "baseline rule of sentence finality," under which "sentences may not be modified once imposed." *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020).  However, under narrow circumstances, courts may "modify an imposed term of imprisonment *to the extent*

---

[3] Additionally, under the November 1, 2023 Sentencing Guideline Amendments the provisions of U.S.S.G. §4A1.1(d) (2021) transitioned to U.S.S.G. §4A1.1(e) (2023).  This provision of Amendment 821 applies retroactively. U.S.S.G. §1B1.10(d) (2023).  However, Mr. Allen is ineligible for a sentence reduction under Amendment 821 at §4A1.1(e) because he would have a total offense level of 43 and would qualify for a reduction of one status point, resulting in a total of 10 criminal history points.  This change would have no impact on the criminal history category, which remains V, or the guideline imprisonment range, which remains Life imprisonment on Count One.

*otherwise expressly permitted by statute.*" 18 U.S.C. § 3582(c)(1)(B) (emphasis added).

Accordingly, courts have understood § 3582(c)(1)(B) to authorize sentence modifications under

the First Step Act. *See United States v. Wirsing*, 943 F.3d 175, 185 (4th Cir. 2019), *as amended*

(Nov. 21, 2019) ("the distinct language of the First Step Act compels the interpretation that

motions for relief under that statute are appropriately brought under § 3582(c)(l)(B)"); *United*

*States v. Roane*, No. 3:92cr68 (DJN), 2020 WL 6370984, at *5 (E.D. Va. Oct. 29, 2020), *aff'd*,

51 F.4th 541 ("By the plain language of § 3582(c)(1)(B), the [c]ourt may modify [a d]efendant's

sentences only as *expressly permitted* by the Fair Sentencing Act and the First Step Act."

(emphasis in original)).

### A.   Compassionate Release Under the Fair Sentencing Act

The Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010), provided

the substantive change that Mr. Allen claims entitles him to a reduction of his sentences for his

murder and drug convictions. The Fair Sentencing Act addressed a sentencing disparity between

crack and powder cocaine offenses by increasing the amount of crack cocaine needed to trigger

mandatory minimum sentences. *Wirsing*, 943 F.3d at 178. The disparity originated in a statute

passed in 1986 titled the Anti-Drug Abuse Act of 1986. *Kimbrough v. United States*, 552 U.S.

85, 95 (2007) (citing Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207). The

Anti-Drug Abuse Act introduced mandatory minimums for drug offenses tied to specific weights

of particular drugs. Anti-Drug Abuse Act § 1002, 100 Stat. at 3207-2 to -4 (codified at 21

U.S.C. § 841(b)(1)). The statute imposed a ten-year mandatory minimum sentence for a

defendant convicted of an offense involving 5 kilograms of cocaine or 50 grams of crack

cocaine. *Id.* § 1002, 100 Stat. at 3207-2. Similarly, the statute mandated a five-year minimum

sentence for a conviction of 500 grams or more of powder cocaine or 5 grams or more of crack

8

cocaine. *Id.* § 1002, 100 Stat. at 3207-3. Thus, the Anti-Drug Abuse Act provided that "a drug trafficker dealing in crack cocaine [was] subject to the same sentence as one dealing in 100 times more powder cocaine." *Kimbrough*, 552 U.S. at 91.

In 2010, Congress passed the Fair Sentencing Act to reduce this disparity to 18:1. *See United States v. Black*, 737 F.3d 280, 282 (4th Cir. 2013) ("Congress enacted the Fair Sentencing Act [] in response to extensive criticism about the disparity in sentences between crack offenses and powder cocaine offenses."). In § 2, the Fair Sentencing Act reduced the statutory minimums for crack cocaine offenses by increasing the quantity of crack cocaine necessary to trigger the minimums. *Id.* Specifically, Section 2 amended 21 U.S.C. § 841(b)(1) to raise the amount from 15 grams to 28 grams for the 5-year minimum, and from 50 grams to 280 grams for the 10-year minimum sentence. *See* Fair Sentencing Act § 2, 124 Stat. at 2372 (codified at 21 U.S.C. § 841(b)(1)). Additionally, in Section 3, the Fair Sentencing Act eliminated the mandatory minimum sentence for "simple possession" of crack cocaine. *Id.* § 3, 124 Stat. at 2372 (codified at 21 U.S.C. § 844(a)).

Although the Fair Sentencing Act reduced the sentencing disparity in offenses involving the possession, production or distribution of crack cocaine, it did not amend the statutory penalties for violent crimes in furtherance of trafficking crack cocaine. Rather, Congress directed the United States Sentencing Commission to amend the Sentencing Guidelines to increase the offense levels "if the defendant used violence, made a credible threat to use violence, or directed the use of violence during a drug trafficking offense." *Id.* § 5, 124 Stat. at 2373. Likewise, Congress directed the Sentencing Commission to increase the offense levels based on the defendant's role and other aggravating factors, including if the "defendant committed the drug trafficking offense as part of a pattern of criminal conduct engaged in as a

livelihood." *Id.* at § 6, 124 Stat. at 2373.  The statute's language clearly demonstrates congressional intent to reduce the penalties for non-violent crack cocaine offenses without commensurate reductions for violent crack cocaine offenses.

Later, the Supreme Court held that the new penalty provisions in the Fair Sentencing Act applied to all crack cocaine offenders sentenced on or after August 3, 2010, even for offenses committed before that date.  *Dorsey v. United States*, 567 U.S. 260, 264 (2012).  However, the modifications to the statutory minimum sentences did "not apply retroactively to defendants who both committed crimes and were sentenced for those crimes before August 3, 2010." *Black*, 737 F.3d at 287 (emphasis omitted).  This provision would cover Mr. Allen's 2004 convictions and sentencing.

### B.    The First Step Act of 2018

Congress sought to remediate the non-retroactivity of the statute with the passage of the First Step Act of 2018, 132 Stat. at 5194.  Section 404 of the First Step Act, in particular, provides a narrow avenue for retroactive application of the amended mandatory minima.

To qualify for retroactive relief under the First Step Act, a defendant must show that they (1) committed a "covered offense" under Section 404(a)[4] before August 3, 2010, (2) did not have their sentence imposed or reduced under sections 2[5] or 3[6] of the Fair Sentencing Act of 2010, and

---

[4] Section 404(a) defines a "covered offense" as "a violation of Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010."  First Step Act, 132 Stat. at 5222.

[5] Section Two of the Fair Sentencing Act of 2010 provides:

(a) CSA.—Section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) is amended—

(3) did not file a previous motion under § 404 of the First Step Act that that Court decided on the merits. *See United States v. Hardnett*, 417 F. Supp. 3d 725, 734 n.7 (E.D. Va. 2019) (quoting First Step Act statute and limitations contained therein). In determining whether a conviction is a covered offense under the First Step Act, courts are instructed to consider "whether the Fair Sentencing Act modified the statutory penalties for [the] petitioner's offense." *Terry*, 593 U.S. at 492; *see also United States v. Allen*, No. 3:03cr394 (DJN), 2022 WL 2124495, at *2 (E.D. Va. June 13, 2022) ("*Terry* dictates that answering this question involves examining the elements of the offense and determining [ ] the statutory penalties that would result from a conviction charging those same elements changed in 2010 with the passage of the Fair Sentencing Act.").

The Supreme Court has clarified that the modified statutory penalties apply "only for subparagraph (A) and (B) crack offenses [under § 841(b)(1)]—that is, the offenses that triggered mandatory-minimum penalties." *Terry*, 593 U.S. at 495. Namely, "[w]hile career offenders convicted under subparagraph (A) or subparagraph (B) can now seek resentencing, that door

---

      (1) in subparagraph (A)(iii), by striking ''50 grams'' and inserting ''280 grams''; and

      (2) in subparagraph (B)(iii), by striking ''5 grams'' and inserting ''28 grams''.

   (b) IMPORT AND EXPORT ACT.—Section 1010(b) of the Controlled Substances Import and Export Act (21 U.S.C. 960(b)) is amended—

      (1) in paragraph (1)(C), by striking ''50 grams'' and inserting ''280 grams''; and

      (2) in paragraph (2)(C), by striking ''5 grams'' and inserting ''28 grams''.

Fair Sentencing Act of 2010, § 2, 124 Stat. at 2372.

   [6] Section Three of the Fair Sentencing Act of 2010 states, "Section 404(a) of the Controlled Substances Act (21 U.S.C. 844(a)) is amended by striking the sentence beginning 'Notwithstanding the preceding sentence'." Fair Sentencing Act of 2010, § 3, 124 Stat. at 2372.

remains closed to career offenders convicted under subparagraph (C)." *Id.* at 502 (Sotomayor, J., concurring in part).

However, a Court is not prohibited from reducing an individual's sentence simply because an offense is not a covered offense under the First Step Act. In *United States v. Richardson*, 96 F.4th 659 (4th Cir. 2024), the United States Court of Appeals for the Fourth Circuit advised that "a district court has the discretion to reduce both covered and noncovered offenses under the First Step Act if they function as a package." 96 F.4th at 665. The sentencing package doctrine "recognizes the holistic approach district courts employ when fashioning a sentence and recognizes that the sentencing on multiple counts is an 'inherently interrelated, interconnected, and holistic process.'" *Id.* (citing *United States v. Ventura*, 864 F.3d 301, 309 (4th Cir. 2017)). "Allowing district judges to resentence interconnected charges furthers the purpose of the [First Step] Act and gives district judges the flexibility to tailor a defendant's sentence holistically based on the new statutory scheme." *Id.* at 666.

### III.  Analysis

After due consideration, the Court will grant in part the Motion for Compassionate Release. (ECF No. 1671.)  The Court will grant in part the Motion for Compassionate Release upon finding that (1) Count Two is a "covered offense" under the First Step Act, (2) Counts One and Two act as a package for sentencing purposes, and (3) the sentencing factors set forth in 18 U.S.C. § 3553(a)[7] support a partial reduction in sentence.

---

[7] Section 3553(a) of Title 18 of the United States Code states, in pertinent part:

The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

A.  **<u>Eligibility Generally</u>**

The Court must first address the threshold covered offense question, because "eligibility [for a sentence modification] turns on the proper interpretation of a 'covered offense.'" *Wirsing*, 943 F.3d at 185; *United States v. Gravatt*, 953 F.3d 258, 260 (4th Cir. 2020) ("[T]he existence of a 'covered offense' is a threshold requirement under the [First Step Act]."). By its own terms, the First Step Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of

---

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

2010[.]" First Step Act, § 404(a), 132 Stat. 5222.  Accordingly, eligibility turns on which statute

a defendant violated and whether Section 2 or 3 of the Fair Sentencing Act modified the statutory

penalties for that offense.  *See Terry*, 593 U.S. at 492 (emphasizing that "covered offense"

inquiry turns on change to statutory penalties for the defendant's violation of the law).  In Mr.

Allen's case, the parties agree that Count Two (Conspiracy to Distribute and Possess with Intent

to Distribute 50 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 846), is a "covered

offense." (*See* ECF No. 1705, at 1; ECF No. 1706, at 1.)  However, the parties disagree as to

whether Count One (RICO conspiracy) is also a "covered offense." (*See* ECF No. 1682, at 13;

ECF No. 1690, at 1–4.)

      Following passage of the First Step Act, the United States Court of Appeals for the

Fourth Circuit took a broad view of what constituted a "covered offense" and a defendant's

eligibility for relief under the statute.  In *Wirsing*, the Fourth Circuit held that the "most natural

reading of the First Step Act's definition of 'covered offense' is that 'the statutory penalties for

which were modified by [certain sections of the Fair Sentencing Act]' refers to 'a Federal

criminal statute' rather than 'a *violation* of a Federal criminal statute.'" 943 F.3d at 185 (quoting

§ 404(a)) (alteration and emphasis in original).  Then, in *United States v. Woodson*, the Fourth

Circuit held that the First Step Act "modified the statutory penalties of 21 U.S.C. § 841(b)(1)(C)

as it pertains to crack cocaine offenses, such that a conviction for trafficking crack cocaine

pursuant to that statute is a 'covered offense.'" 962 F.3d 812, 814 (4th Cir. 2020).  It made this

determination, even though the First Step Act did not amend the penalties for § 841(b)(1)(C),

because Congress had altered the quantities required to trigger the penalty in subsection (C) for

offenses involving less than 28 grams of crack cocaine.  *Id.* at 816.  It clarified that "the relevant

change for purposes of a 'covered offense' under the First Step Act is a change to the statutory

penalties for a defendant's statute of conviction, not a change to the defendant's particular sentencing range as a result of the Fair Sentencing Act's modifications." *Id.*

The Supreme Court subsequently rejected these approaches in *Terry*. Unlike the Fourth Circuit's holding in *Woodson*, the Supreme Court held that a conviction under § 841(b)(1)(C) did not constitute a covered offense, because "§ 2(a) of the Fair Sentencing Act modified the statutory penalties only for subparagraph (A) and (B) crack offenses[.]" 593 U.S. at 495. In making this conclusion, it also rejected the Fourth Circuit's reasoning in *Wirsing*. The *Terry* Court explained that "'statutory penalties' references the entire, integrated phrase '*a violation* of a Federal criminal statute,'" *Id.* at 492. 141 S. Ct. at 1863 (internal quotation marks omitted) (emphasis added), whereas the Fourth Circuit had determined that the statutory penalties "refers to a 'Federal criminal statute'" rather than a violation of a Federal criminal statute. *Wirsing*, 943 F.3d at 185. Thus, the Supreme Court concluded that the First Step Act "directs our focus to the statutory penalties for petitioner's *offense*, not the statute or statutory scheme." 593 U.S. at 494 (emphasis in original).

## B.   Eligibility of Count Two Under the First Step Act

The Court will begin its analysis with Count Two. The parties correctly agree that Count Two constitutes a covered offense eligible for a sentence reduction under the First Step Act. (ECF No. 1705, at 1; ECF No. 1706, at 1.) The First Step Act imposes three eligibility requirements. To qualify for consideration for relief, a defendant must show that he or she: (1) committed a covered offense on or before August 3, 2010; (2) did not have the sentence reduced under sections 2 or 3 of the Fair Sentencing Act of 2010; and, (3) did not file a previous motion under § 404 of the First Step Act that the Court denied on the merits. *See United States*

*v. Hardnett*, 417 F. Supp. 3d 725, 733 n.7 (E.D. Va. 2019) (citing First Step Act statute and limitations).

Here, the Court finds Mr. Allen eligible for a sentence reduction under the First Step Act for his Count Two conviction. First, he committed a covered offense — a violation of 21 U.S.C. § 846, with § 841(b)(1)(A)(iii) as its object — before August 3, 2010. *See Chambers*, 956 F.3d at 668–69 (reviewing sentence imposed for eligible offense of conspiracy to possess with intent to distribute 50 or more grams of cocaine base). Second, he did not have his sentence imposed or reduced under Section 2 or 3 of the Fair Sentencing Act of 2010. Third, he has not filed a previous motion under § 404 of the FSA that the Court has denied on the merits. Indeed, the Government does not contest that Count Two constitutes a covered offense. Accordingly, the Court concludes that Mr. Allen's sentence for Count Two is eligible for a sentence reduction under the FSA.

C.   **Eligibility of Count One Under the First Step Act**

Using the framework set forth by the Supreme Court, the Court must next determine whether Mr. Allen's conviction for RICO conspiracy under Count One constitutes covered offenses, thereby rendering him eligible for a sentence reduction under the First Step Act.

1.   ***Terry*'s Framework**

In *Terry*, the Supreme Court instructed courts to "ask whether the Fair Sentencing Act modified the statutory penalties for petitioner's offense." 593 U.S. at 492. *Terry* dictates that answering this question involves examining the elements of the offense and determining whether the Fair Sentencing Act would result in the same statutory penalties as a conviction charging those same elements changed in 2010. For example, the *Terry* Court noted that someone charged with the original elements of § 841(b)(1)(A)(iii) — knowing or intentional possession

16

with intent to distribute at least 50 grams of crack — faced a statutory penalty range of ten years to life in prison before 2010. *Id.* at 493. However, "a person charged with those original elements after 2010 is now subject to the more lenient prison range for subparagraph (B): 5-to-40 years." *Id.* at 494. The *Terry* Court contrasted those offenses with a conviction under subparagraph (C), the elements of which are "(1) knowing or intentional possession with intent to distribute, (2) some unspecified amount of a schedule I or II drug." *Id.* at 493. The Supreme Court noted that before 2010, that offense carried statutory penalties of 0-to-20 years. *Id.* "After 2010, these statutory penalties remain exactly the same" for someone charged with those same elements. *Id.* Consequently, "[t]he Fair Sentencing Act thus did not modify the statutory penalties for petitioner's offense." *Id.* As a result, the *Terry* Court held "that § 2(a) of the Fair Sentencing Act modified the statutory penalties only for subparagraph (A) and (B) crack offenses — that is, the offenses that triggered mandatory-minimum penalties." *Id.* at 495.

The Fourth Circuit has recognized that *Terry* narrowed the definition of a "covered offense." *Thomas*, 32 F.4th 420, 425 (4th Cir. 2022) ("Recently, however, the Supreme Court rejected our approach in *Woodson*[.]"). In *Thomas*, the Fourth Circuit considered whether a defendant convicted under §§ 848(a) and (c) may seek relief under the First Step Act. 32 F.4th at 423. The *Thomas* Court concluded that he could not. *Id.* The Fourth Circuit examined the elements of each offense. In rejecting the defendant's argument that his Continuing Criminal Enterprise ("CCE") conviction was predicated on his offenses for distributing crack cocaine, rendering it a covered offense, the *Thomas* Court noted that *Terry* trains the court's focus "'on the statutory penalties for petitioner's offense, not the statute or statutory scheme.'" *Id.* at 425–26 (quoting *Terry*, 593 U.S. at 494). Instead,

> Though the [Fair Sentencing] Act did modify the penalties for Thomas's predicate violations under §§ 841(a)(1) and 846, Thomas's statutory penalty range for

> violating §§ 848(a) and (c) remained the same before and after the FSA — 20 years to life imprisonment, a fine, and a term of supervised release. Thus, because Thomas is serving a sentence for violating §§ 848(a) and (c), his offense is not a covered offense under the Act.

*Id.* at 427. Importantly, Thomas's conviction only "required a finding that he committed a continuing series of drug violations," but "the quantity and drug type of these violations made no difference for sentencing purposes." *Id.* at 427–28. The Court will examine Mr. Allen's RICO offense (Count One) and determine whether the Fair Sentencing Act modified the statutory penalties for his offense with these principles in mind.

### 2.    Elements of Mr. Allen's RICO Offense

The RICO conspiracy statute reads: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). As *Terry* instructs, the Court will focus on the elements of Mr. Allen's offense to determine whether the Fair Sentencing Act modified its statutory penalties.

The Fourth Circuit recently examined the elements of a RICO conspiracy offense in the context of whether a RICO conviction constituted a crime of violence for purposes of 18 U.S.C. § 924(c). *United States v. Simmons*, 11 F.4th 239 (4th Cir. 2021). The court stated that a § 1962(d) RICO prosecution involves only three essential elements:

> (1) that an enterprise affecting interstate commerce existed; (2) that each defendant knowingly and intentionally agreed with another person to conduct or participate in the affairs of the enterprise; and (3) that each defendant knowingly and willfully agreed that he or some other member of the conspiracy would commit at least two racketeering activities.

*Id.* at 254 (internal quotations omitted). The statute defines "racketeering activity" to include "any act or threat involving murder" or numerous other federal or state law criminal offenses "which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1). A § 1962(d) conspiracy can exist "even if no co-conspirator completes *any*

18

of the agreed-upon racketeering acts." 11 F.4th at 255 (emphasis in original) (citing *Salinas v. United States*, 522 U.S. 52, 63 (1997)).

The RICO statute provides that a defendant who "violates any provision of section 1962" faces a maximum sentence of twenty years' imprisonment. 18 U.S.C. § 1963(a). However, if the violation of the RICO statute is "based on a racketeering activity for which the maximum penalty includes life imprisonment," such as with Mr. Allen's charge in Count One, for which he was convicted of "commit[ing], or aid[ing] and abet[ing], the willful, deliberate, and premeditated killing of Robert Brabson, Jr.," then the maximum penalty for the RICO offense increases to life imprisonment. *Id.*

In *Simmons*, the Fourth Circuit discussed whether this sentencing enhancement factor created an additional element for an "aggravated" form of the crime. 11 F.4th at 255–56. If not, then a RICO offense would require proving the three elements discussed above. *Id.* at 257. If it created an aggravated RICO offense, in addition to the three-element "generic" RICO offense, then the aggravated crime would require proof of the following four elements:

(1) that an enterprise affecting interstate commerce existed;

(2) that each defendant knowingly and intentionally agreed with another person to conduct or participate in the affairs of the enterprise;

(3) that each defendant knowingly and willfully agreed that he or some other member of the conspiracy would commit at least two racketeering acts; and

(4) the defendant committed a "racketeering activity," as that term is defined in 18 U.S.C. § 1961, that carries a maximum statutory penalty of life imprisonment.

*Id.* at 258 (internal quotations omitted).

The *Simmons* Court ultimately declined to conclude that the sentencing enhancement factor created an additional element, because it determined that a RICO conspiracy did not categorically constitute a crime of violence under either framework. *Id.* at 257. In making this

19

determination, the Fourth Circuit noted that the various crimes listed in the statute as racketeering activity constitute means for satisfying the elements of a RICO offense, rather than elements. *Id.* at 259 ("Indeed, 1961(1) lists a number of crimes which can serve as the *means* for satisfying that element of an aggravated RICO conspiracy as they authorize the imposition of a life sentence.") (emphasis in original).

Here, likewise, the Court need not definitively determine whether a RICO offense subject to life imprisonment constitutes an additional aggravated offense, as neither would constitute a covered offense under the First Step Act. Following the Supreme Court's guidance in *Terry*, the Court will compare the statutory penalties faced by someone charged with the same elements before and after the 2010 passage of the Fair Sentencing Act.

### 3.   Application of *Terry* to the Elements of Mr. Allen's RICO Offense

Before the passage of the Fair Sentencing Act in 2010, a defendant charged with the elements of the generic RICO conspiracy under § 1962(d) — (1) the existence of an enterprise affecting interstate commerce, (2) intentionally agreeing to participate in the enterprise, and (3) agreeing that a member of the conspiracy would commit at least two racketeering activities — faced a term of imprisonment ranging up to twenty years. *See* 18 U.S.C. § 1963 (last amended May 7, 2009). Following the passage of the Fair Sentencing Act, a person charged with those same elements faces a range of imprisonment up to twenty years. *Id.* at § 1963(a). Thus, the Fair Sentencing Act did not modify the statutory penalties of a RICO conspiracy.

The same result holds with respect to an aggravated RICO conspiracy. Before the Fair Sentencing Act, a defendant charged with the four elements of an aggravated RICO conspiracy — (1) the existence of an enterprise affecting interstate commerce, (2) intentionally agreeing to participate in the enterprise, (3) agreeing that a member of the conspiracy would commit at least

20

two racketeering activities, and (4) the commission of a racketeering activity that carries a maximum statutory penalty of life imprisonment — would have faced a statutory penalty range from zero years to life imprisonment. *Id.* Following the passage of the Fair Sentencing Act, a person charged with those same elements faces the same statutory penalty range. *Id.* Thus, the Fair Sentencing Act did not change the statutory penalty range for an aggravated RICO conspiracy. That a covered offense could have formed the predicate for the fourth element does not change the analysis. The fourth element could include any number of racketeering activities, including other drug violations that do not involve quantities of crack cocaine implicated by the Fair Sentencing Act.

In any event, the Count One RICO charge is not a covered Offense. Mr. Allen fails to articulate how his RICO offense equates a covered offense for purposes of the First Step Act. Rather, Mr. Allen asserts that "the United States should not now be allowed to argue an inconsistent position" when it "concede[d] that Count One constitute[d] a 'covered offense'" in its opposition to Mario Allen's (Mr. Allen's brother and co-defendant) Motion for Compassionate Release. (ECF No. 1690, at 1–2.) If Mr. Allen is attempting to adopt the position that his RICO offense is a "covered offense" because the drug offense is a covered offense, the Court is unpersuaded.

This Court is in agreement with the finding of the Court, in ruling on Mario Allen's Motion for Compassionate Release, that:

> To the extent that drug offenses form the predicate of a RICO conspiracy, the RICO charge does not "turn on the punishment" for the drug offenses. Rather, the RICO charge turns on the conduct underlying the drug offenses — the commission of a drug offense. *See* 18 U.S.C. § 1961(1)(D) (defining "racketeering activity" to include "any offense involving . . . buying, selling, or otherwise dealing in a controlled substance . . . , punishable under any law of the United States"). The element that includes the racketeering activity does not turn on the type or quantity of drug like the elements of the drug offenses do. Instead,

21

> 18 U.S.C. § 1963 controls the punishment, not 21 U.S.C. § 841(b). And, although the Fair Sentencing Act modified the statutory penalties for 21 U.S.C. § 841(b), it left the statutory penalties for 18 U.S.C. § 1963 unaltered. Whether the underlying racketeering activity involved the distribution of 29 grams of crack cocaine (5-40 years' imprisonment for a stand-alone conviction) or 1 gram of crack cocaine (0-20 years' imprisonment for a stand-alone conviction), his statutory penalties for the RICO conspiracy remained the same.

*United States v. Allen*, 3:03cr394 (DJN), 2022 WL 2124495, at *25–26 (E.D.Va. June 13, 2022).

Although the Fair Sentencing Act modified the statutory penalties for the specific racketeering activities that form a predicate for Mr. Allen's RICO conspiracy conviction, the element of the RICO conspiracy conviction does not depend on "whether crack was involved or on the quantity of crack involved." *Thomas*, 32 F.4th 427. Instead, it requires the agreement to commit a "racketeering activity," which does not depend on the type or quantity of drug. Because Mr. Allen is serving a sentence for violating § 1962(d), his offense is not covered under the First Step Act. *See Thomas,* 32 F.4th at 427 ("Thus, because Thomas is serving a sentence for violating §§ 848(a) and (c), his offense is not a covered offense under the Act.").

### 4.    Support from the Purpose of the Fair Sentencing Act

The conclusion that the First Step Act does not cover a RICO conspiracy finds support in the purpose behind the Fair Sentencing Act. Mr. Allen received a life sentence on Count One because he conspired to engage in a racketeering enterprise that murdered people and distributed drugs, regardless of the type or quantity of the drugs. The Fair Sentencing Act sought to reduce the sentencing disparity for dealing crack cocaine as opposed to dealing other drugs. *See Black*, 737 F.3d at 282 ("Congress enacted the Fair Sentencing Act of 2010 . . .in response to extensive criticism about the disparity in sentences between crack cocaine offenses and powder cocaine offenses."). It did not seek to reduce the penalties for committing violence in furtherance of trafficking drugs. Instead, Congress sought to increase the sentences for these acts, instructing

the Sentencing Commission to increase the offense levels "if the defendant used violence, made a credible threat to use violence, or directed the use of violence during a drug trafficking offense." Fair Sentencing Act § 5, 124 Stat. at 2373. Similarly, Congress sought increases to the offense levels if the "defendant committed the drug trafficking offense as part of a pattern of criminal conduct engaged in as a livelihood." *Id.* at § 6, 124 Stat. at 2373–74. Reducing Defendant's sentence for conspiring to commit murder while engaging in a drug distribution scheme runs contrary to Congress's intent to have the Fair Sentencing Act reduce the penalties for non-violent crack cocaine offenses while increasing the sentencing guideline ranges for violent crack cocaine offenders. *See* Fair Sentencing Act § 5, 124 Stat. at 2373; *see also United States v. Roane*, 3:92cr68 (DJN), 2020 WL 6370984, at *16 (E.D.Va. October 29, 2020).

Accordingly, for the reasons articulated above, the Court finds that Defendant's conviction under § 1962(d) for a RICO conspiracy does not constitute a covered offense for the purposes of the First Step Act.

**D.   Mr. Allen's Sentence Functioned as a Package**

While Mr. Allen's RICO conspiracy conviction is not a covered offense that automatically authorizes the Court to reduce Mr. Allen's, this does not the end of the Court's analysis. The Court "has the discretion to reduce both covered and noncovered offenses under the First Step Act if they function as a package." *Richardson*, 96 F.4th at 665. This "recognizes the holistic approach district courts employ when fashioning a sentence" and allows the Court to "reconfigure the sentencing plan to ensure it remains adequate to satisfy the statutory sentencing factors." *Richardson*, 96 F.4th at 665–666 (citing *United States v. Mendoza-Mendoza*, 597 F.3d 212, 216 (4th Cir. 2010) ("The ultimate question . . . is whether the sentence is 'sufficient, but

23

not greater than necessary' in light of the factors identified in § 3553(a).") (internal citation omitted).

It cannot be disputed that Mr. Allen's offenses function as a package for sentencing purposes. According to the PSR, Counts One and Two were grouped in accordance with U.S.S.G. § 3D1.2(d), with the highest offense level of the group determining the offense level for the entire group. Count One(B) was cross referenced with First Degree Murder pursuant to U.S.S.G. § 2A1.1(a), producing a base offense level of 43. (ECF No. 1629-1, at 33.) Therefore, Count Two was also given an offense level of 43. (ECF No. 1629-1, at 34.) This resulted in a sentencing guidelines range of life imprisonment on each count. (ECF No. 1629-1, at 29.) Had Counts One and Two not been packaged together, Mr. Allen's offense level for Count Two would have been 34, combined with a Criminal History Category of V, would have resulted in a sentencing guidelines range of 120 months' incarceration to life imprisonment. *See* 21 U.S.C. § 841(b)(1)(B) (2003). For this reason, the Court has the authority to reduce Mr. Allen's sentence for Count One even though it is not a covered offense.

**E. <u>The Reduction in Mr. Allen's Sentence</u>**

Upon a finding of eligibility, and determining the offenses operate as a "package," a court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." First Step Act § 404(b), 132 Stat. at 5222; *see Richardson*, 96 F.4th at 665–666. Even if a defendant meets the eligibility criteria for a sentence reduction, the Court retains discretion over whether to grant the reduction. *Wirsing*, 943 F.3d at 180 ("Among other limitations, Congress left the decision as to whether to grant a sentence reduction to the district court's discretion."); First Step Act § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this

section."). Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B)).

The Court begins by observing the change in statutory penalties for Count Two. The Fair Sentencing Act altered the statutory penalties for Count Two from 10 years to life imprisonment down to 5-to-40 years imprisonment. *See Terry*, 593 U.S. at 493–94 (noting the lowered statutory penalty ranges for a defendant charged with possessing with intent to distribute at least 50 grams of crack cocaine).

The Court will next calculate the Guideline Range for Count Two under the current Sentencing Guidelines. The PSR attributed 139.60 grams of cocaine base to Mr. Allen when determining the offense level for Counts Two and One(a), the drug predicate. (ECF No. 1629-1 ¶ 49.) Under U.S.S.G. § 2D1.1(c)(7), this would now result in a base offense level of 26. Mr. Allen received a two-level enhancement for a dangerous weapon under U.S.S.G. § 2D1.1(b)(1), raising the offense level for Counts One(A) and Two to 28. (ECF No. 1629-1 ¶ 49.) The RICO first-degree murder in Count One(B) carries an offense level of 43 under U.S.S.G. § 2A1.1.[8]

---

[8] Mr. Allen argues that his RICO offense should not have been "cross-referenced to a murder in which Mr. Allen did not actively participate." (ECF No. 1690, at 7.) Mr. Allen supplies an affidavit from Curtis Watson, a co-defendant, who attests that Mr. Allen did not participate in the shooting that killed Mr. Brabson. (ECF No. 1690-3, at 1.) Mr. Allen asserts that records from the Petersburg Court system would show that Mr. Ronald Blowe, another co-defendant, actually committed the murder of Mr. Brabson. (ECF No. 1690, at 7.)

Under the grouping rules found in U.S.S.G. § 3D1.4(c), because the two offense levels span greater than nine offense levels, no additional grouping enhancement applies. Thus, under U.S.S.G. § 3D1.4, Mr. Allen's combined offense level would remain 43 for all counts. Combined with a Criminal History Category of V, (ECF No. 1629-1 ¶ 102), the Guideline Range for Counts One and Two remain life imprisonment on each count.[9]  However, the statute restricts the sentence on Count Two to a maximum of forty years imprisonment.

---

Mr. Allen's assertion of innocence is a collateral attack on his conviction and is not properly brought as a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). A motion under "[28 U.S.C.] § 2255 is the exclusive method of collaterally attacking a federal conviction or sentence;" therefore, "a criminal defendant is foreclosed from the use of another mechanism, such as compassionate release, to sidestep § 2255's requirements." *United States v. Ferguson*, 55 F.4th 262, 270 (4th Cir. 2022). However, § 2255 was intended to provide additional remedies for federal prisoners, not to limit their ability to collaterally attack their convictions and sentences. *Jones v. Zych*, 821 Fed.Appx. 115, at 119 (4th Cir. 2020) (citing *Davis v. United States*, 417 U.S. 333, 343 (1974), and *In re Jones*, 226 F.3d 328, 332 (4th Cir. 2000)). Thus, "when § 2255 proves 'inadequate or ineffective to test the legality of his [or her] detention,'" such as when a petitioner has previously filed one unsuccessful § 2255 motion, "a federal prisoner may petition for habeas relief under § 2241" instead. *Id.* (quoting 28 U.S.C. § 2255(e)); *see also Fontanez v. O'Brien*, 807 F.3d 84, 87 (4th Cir. 2015) (recognizing that "attacks on the execution of a sentence are properly raised in a § 2241 petition").

Mr. Allen is foreclosed from filing a § 2255 motion because he has previously filed an unsuccessful one. (*See* ECF Nos. 1209, 1243, 1320); *see Jones v. Zych*, 812 F. App'x 115, 119– 20 (noting that "federal prisoners . . . who have already filed one unsuccessful § 2255 motion, are generally barred from taking a second bite at the apple" and that in such cases "their last hope is to file a traditional § 2241 petition via § 2251's savings clause"). Thus, if Mr. Allen seeks to challenge his conviction, he should file the appropriate motion under 28 U.S.C. § 2241 for a writ of habeas corpus.

[9] In the 2023 Criminal History Amendments to the United States Sentencing Guidelines, Part A of Amendment 821 (status points under § 4A1.1) and Part B of Amendment 821 (Zero-Point Offenders) changed this guideline and did so, importantly, retroactively. What is now U.S.S.G. § 4A1.1(e) — relative to the former § 4A1.1(d) — can reduce the number of points applicable to an offender's criminal history when the offense was committed while under a criminal justice sentence. The application to zero-point offenders could also reduce an individual's criminal history points.

An analysis of the factors set forth in 18 U.S.C. § 3553(a) supports the Court granting Mr. Allen a reduction to the restricted range of 40 years on Count One and on Count Two. 18 U.S.C. § 3553(a).

The Court concludes that the nature and circumstances of the offense weigh in favor of granting Mr. Allen partial compassionate release. *See* U.S.C. § 3553(a)(1). Mr. Allen committed serious and dangerous offenses, for which he will serve a 480 month, or 40-year, prison sentence after the Court grants a partial sentence reduction. Mr. Allen seeks a reduction to time served and 4 years of supervised release on Counts One(a) and Two. The Court cannot fully grant his request.

Mr. Allen was just 18 years old at the time of his arrest and has been incarcerated for most of his life. His "relative youth" at the time of his offense further supports relief. *See United States v. McCoy*, 981 F.3d 271, 274, 276, 286 (4th Cir. 2020). Even considering that, a sentence of 480 months, or 40 years, on Count One and 480 months, or 40 years, on Count Two to be served concurrently to each other and the state sentence is sufficient but not greater than necessary to reflect the violent nature of the criminal conduct Mr. Allen undertook. It will adequately deter criminal conduct and protect the public. After the sentence reduction, Mr. Allen will still have approximately nineteen years left to serve, and upon release Mr. Allen will begin to serve a five-year supervised release term. The Court cannot see a lesser sentence as appropriate given the violent nature of Mr. Allen's conduct.

Although Congress has made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for sentence modification, 28 U.S.C.

---

The Court applies Amendment 821 retroactively. Mr. Allen's total criminal history points would drop from 11 to 10. (*See* ECF No. 1629-1, at 37.) Mr. Allen's criminal history category would remain V and, thus, his sentencing guidelines are not affected.

§ 994(t), the Court may account for rehabilitative efforts when considering a defendant's risk of recidivism. *See Martin*, 916 F.3d at 397–98. The Fourth Circuit has explained that if an individual is eligible for a sentence reduction, the district court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken[.]" *Id.* at 397. Mr. Allen's record of rehabilitation indicates a reduced risk. While incarcerated, he has participated in over 650 hours of BOP–sponsored education and vocational opportunities. (ECF No. 1671-2, at 1.) Mr. Allen received his High School Equivalency Credential (commonly called "GED" for General Education Development), (ECF No. 1671-2, at 3), and has completed other classwork to include Victim Impact, Drug Education, over six health related classes, Data Analysis, Higher Order Thinking, CDL classes, and Parenting. (*See* ECF No. 1671-2.) The Court acknowledges and commends Mr. Allen's participation in programs during his time in prison, especially because he undertook them while serving a life sentence. He could not have anticipated they might help reduce his sentence at a later date. But these measures do not warrant the degree of his requested reduction in light of the violent nature of his offense.

Mr. Allen clearly has community support and what seems to be a viable release plan. (ECF no. 1671, at 14.) Eight people support his release and believe he is genuinely remorseful and ready to reenter society. His oldest brother, Shawn Allen, is gainfully employed and will welcome Mr. Allen into his home while "stay[ing] on him to do right." (ECF No. 1671-3, at 5.) Mr. Allen's friend and a former correctional counselor, Mr. Gary Pegram, will assist Mr. Allen with his transportation needs and provide other general support. (ECF No. 1671-3, at 1.) Mr. Allen also has a large family, including his mother, sister, brothers, nieces, and nephews, who all

continue to express their support for him and their desire to have him back home. (*See* ECF No. 1671-3, at 2–14.)

Therefore, taking all factors into consideration, the Court concludes that a reduction in Mr. Allen's sentence, from life to 40-years imprisonment on each count to run concurrently, is warranted.

**F.     <u>Mr. Allen's Term of Supervised Release</u>**

The Court next considers whether to reduce Mr. Allen's term of supervised release, because custodial and supervised release terms act as components to form one unitary sentence. *United States v. Ketter*, 908 F.3d 61, 65 (4th Cir. 2018); *see also United States v. Venable*, 943 F.3d 187, 194 (4th Cir. 2019) (holding that a defendant serving revocation sentence as part of the penalty for his initial sentence "is still serving his sentence for a 'covered offense' for purposes of the First Step Act."). The Court concludes that Mr. Allen's circumstances do not warrant a reduction in his term of supervised release. First, Mr. Allen's current term of supervised release on Count Two (5 years) lies within the statutorily prescribed range. *See* 21 U.S.C. § 841(b)(1)(B) (minimum 4-year term of supervised release); 18 U.S.C. § 3583(b)(1) (maximum 5-year term of supervised release for Class A or B felonies); *see also* (ECF No. 1629-1 at 40, Worksheet D (calculating original guideline range of supervised release at 5 years)). Additionally, the same analysis of the § 3553(a) factors that counsel against further reducing Mr. Allen's custodial sentence (discussed above) also weigh against reducing his term of supervised release, especially with respect to the circumstances of the offense and characteristics of Mr. Allen. And probation officers have powerful tools available to them to assist with the reentry into society during supervised release. Therefore, the Court will not reduce Mr. Allen's term of supervised release.

29

### IV.  Conclusion

For the reasons articulated above, the Court will grant in part Mr. Allen's Motion to Reduce Sentence Pursuant to the First Step Act of 2018.  (ECF No. 1671.)  Mr. Allen's *pro se* Motion to Reduce Sentence Pursuant to the First Step Act of 2018 Section 404 of (the Act), (ECF No. 1611), is denied as moot.  The Court will reduce Mr. Allen's sentence on each count from life imprisonment to forty (40) years' imprisonment, to run concurrently to each other and any remaining portion of Mr. Allen's state sentence.  All other provisions of Mr. Allen's Judgment shall otherwise remain unchanged.

An appropriate Order will issue.

Date: 1\21\2025
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

30